IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **RENAY LOYD,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No. 4:19-CV-1209-RDP |
| } | |
| **ANDREW SAUL, Commissioner of the** } | |
| **Social Security Administration,** } | |
| } | |
| **Defendant** } | |

## MEMORANDUM OF DECISION

Plaintiff Renay Floyd ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits. *See also*, 42 U.S.C. § 405(g). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed her application for a period of disability and disability insurance benefits on March 21, 2016, alleging that she became disabled on January 5, 2016 (Tr. 372-75). After the agency denied this application (Tr. 301-18), Plaintiff requested and received a hearing before Administrative Law Judge Sheila E. McDonald ("ALJ") (Tr. 319-20) and was appointed an attorney to represent her. (Tr. 367-68). Following the administrative hearing held March 22, 2018 (Tr. 258-300), the ALJ issued a decision on July 2, 2018, finding Plaintiff was not disabled. (Tr. 13-22). After the Appeals Council (the "Council") subsequently denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4), that decision became the final decision of the

Commissioner, and therefore a proper subject of this Court's appellate review.

Plaintiff was 48 years old at the time of the hearing. (Tr. 13-22, 262, 372). She has a high school education and past relevant work experience as a shipping and receiving clerk, material handler, and shipping and receiving weigher. (Tr. 263, 295-96, 387-91, 399, 431-36). Plaintiff alleges that she has been disabled since January 5, 2016 due to degenerative disc disease, two coronary artery disease post stents, diabetes mellitus, hypertension, and hyperlipidemia, as well as mental impairments of affective disorder and anxiety disorder. (Tr. 13-22). At the time of the hearing, Plaintiff's medication included Simvastatin for high cholesterol, Metoprolol and Coreg (Carvedilol) for high blood pressure, Tylenol 3, Tizanidine, and Neurontin for back pain, Levemir and Metformin for diabetes, and Celexa for anxiety and depression. (Tr. 266-67). Plaintiff rated her pain as a five out of ten before taking the medications, and a four out of ten after taking the medications (Tr. 10-26).

The record relied upon by the ALJ in making her decision included eleven exhibits of treatment records covering the period from December 2012 through February 2018, which revealed a history of chronic lower back pain. (Tr. 507-831). In November 2013, Plaintiff was treated for a metatarsal fracture at Riverview Regional Medical Center ("Riverview"). (Tr. 553). In March 2014, at Gadsden Regional Medical Center, Plaintiff underwent Magnetic Resonance Imaging ("MRI") of the lumbar spine without contrast, revealing no bulging disc. (Tr. 682). In September 2014, Plaintiff was treated at Coosa Pain and Wellness ("Coosa") for chronic pain in her lower back, which she rated on a pain scale of six out of ten. (Tr. 562). In October 2014, Plaintiff was seen again at Coosa for back and leg pain, which she rated at a seven out of ten. (Tr. 565).

In January 2015, Plaintiff visited Coosa for chronic lower back pain with radiculopathy,

which she rated at a five out of ten. (Tr. 568). In March 2015, Plaintiff underwent an MRI of her lumbar spine at Gadsden Regional Medical Center ("Gadsden Regional") after further complaints of back pain. (Tr. 581). In May 2015, Plaintiff returned to Coosa complaining of pain in her lower back. (Tr. 571). In January 2016, Patient visited Gadsden Regional for a lower lumbar MRI due to pain in her lower back. (Tr. 579). In that same month, she visited Riverview Regional Medical Center ("Riverview") for acute lower back pain, Hypertension, and Diabetes. (Tr. 526).

In March 2016, Plaintiff visited Gadsden Orthopaedics Associates, PC ("Gadsden Orthopaedics") due to pain in her lower back and left leg. (Tr. 586). In that same month, she returned for a follow-up at Coosa because of continuous pain in her lower back. (Tr. 576). Also in March 2016, Plaintiff underwent a Computed Tomography ("CT") Scan following complaints of increased back pain and spinal stenosis. (Tr. 674).

The record also reflects that Plaintiff was afflicted by Hypertension, Diabetes, and heart issues. In May 2017, Plaintiff had a cardiac stent placement. (Exhibits 7F and 8F). Plaintiff received inpatient treatment from Riverview Regional Medical Center from May 18, 2017 through May 19, 2017. (Tr. 19-20). Treatment notes indicate that Plaintiff had a cardiac catheter and medical stent, and that her left ventricular ejection fraction was within normal range at 45%-50%. (*Id.*) Physical examination was positive for bilateral pedal edema, but further tests were unremarkable, and Plaintiff was discharged home with oxygen. (*Id.*)

In May 2016, a medical evaluation completed by Dr. Robert Estock concluded that three of Plaintiff's impairments (Disorders of Back-Discogenic and Degenerative, Diabetes Mellitus, and Disorders of the Thyroid Gland) were severe, while three (Hypertension, Affective Disorders, and Anxiety Disorders) were non-severe. (Tr. 307). On the same day, a residual function capacity ("RFC") assessment conducted by Briana Catin, S.D.M. concluded that Plaintiff does have

3

exertional limitations, including (1) maximum of 20 pounds of occasional lifting; (2) maximum 10 pounds of frequent lifting; (3) maximum of 4 hours consecutive standing/walking with normal breaks; and (4) limitation of lower extremities. (Tr. 307-08). Lastly, an assessment of vocational factors concluded that all applicable Medical-Vocational Guidelines would direct a finding of "not disabled" given Plaintiff's age, education, and RFC, meaning that she can adjust to other work available in the national economy. (Tr. 309).

## II.     The ALJ Decision

Disability under the Act is defined as "the inability to engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A). Under the Act, the Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a).

First, the ALJ must determine whether the individual is engaging in SGA. 20 C.F.R. § 404.1520(b). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA. 20 C.F.R. § 404.1574-75. If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. (Tr. 14).

Next, if the individual is not engaging in SGA, the ALJ must determine whether the individual has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20. C.F.R. § 404.1520(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly an individual's

4

ability to perform basic work activities. (Tr. 14). An impairment or combination of impairments is not severe when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1522; Social Security Rulings ("SSRs") 85-28 and 16-3p. If an individual does not have a severe medically determinable impairment or combination of impairments, she is not disabled.

Third, if the individual does have a severe impairment or combination of impairments, the ALJ must determine whether the individual's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 C.F.R. 404.1509), the claimant is disabled.

The ALJ must determine the claimant's RFC before proceeding to step four of the sequential evaluation. 20 C.F.R. § 404.1520(e). An individual's RFC is her ability to do physical or mental work activities on a sustained basis despite limitations from her impairments, including those that are not severe. 20 C.F.R. 404.1520(e) and 404.1545; SSR 96-8p.

Next, the ALJ must determine at step four whether the individual has the RFC to perform the requirements of her past relevant work. 20 C.F.R. 404.1520(f). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. If the individual has the RFC to do her past relevant work, she is not disabled. If she is unable to do any past relevant work, or does not have any past relevant work, the analysis proceeds to the fifth and final step.

In the fifth and final step, the ALJ must determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. 404.1520(g). If she is able to do other work, she is not disabled. *Id.* In order to support a finding that an individual is not disabled at this step, the SSA is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given her RFC, age, education, and work experience. 20 C.F.R. 404.1512(b)(3).

In the present case, the ALJ determined that Plaintiff satisfied the first prong of the analysis because she has not engaged in SGA since January 5, 2016, the alleged onset date of her disability, and has a combination of severe impairments that satisfied the second prong of the analysis. (Tr. 15-17). However, the ALJ further determined that Plaintiff "has no impairment or combination of impairments, which meet or equal the criteria of any of the listed impairments described in Appendix 1 of the Regulations," noting that "[t]he evidence of record does not contain any diagnostic findings, signs, symptoms, or laboratory results that meet or equal any of the listed impairments." (Tr. 17). The ALJ determined that Plaintiff's degenerative disc disease does not meet the listing regarding disorders of the spine (*Id.*)

The ALJ also determined that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R 404.1567(b). (Tr. 18). In considering Plaintiff's symptoms, the ALJ followed a two-step process by first determining whether there was an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce Plaintiff's pain or other symptoms. (Tr. 18). Once that had been established, the ALJ evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit her functional abilities. (*Id.*) While the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, she also determined

that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

The ALJ gave great weight to the Disability Determination Services opinion of Dr. Estock, who opined that Plaintiff's mental impairments caused no more than minimal limitation in functioning. (Tr. 20). The ALJ also noted that Plaintiff continued to smoke cigarettes following a diagnosis of cardiovascular issues while undergoing stent placement and was classified as a heavy smoker. (*Id.*) The ALJ considered the statements and opinions of non-medical sources such as family members, and friends, noting that "[a]lthough these statements may accurately describe what [Plaintiff] chooses to do on a daily basis, they do not establish [Plaintiff] as disabled." (*Id.*) Finally, the ALJ concluded, "[a]fter a thorough review of the evidence of record, including [Plaintiff's] allegations and testimony, forms completed at the request of Social Security, the objective medical findings, medical opinions, and other relevant evidence, [Plaintiff is] capable of performing work consistent with the residual functional capacity established in this decision." (*Id.*)

### III. Plaintiff's Argument for Reversal

Plaintiff has identified four alleged errors of law that require reversal. These purported errors identified are presented in Plaintiff's brief with varying degrees of clarity. First, Plaintiff argues that the ALJ failed to develop a full and fair record as shown by the itemization of medical records supplied by new counsel. (Pl.'s Mem. 19). Second, Plaintiff argues that the Appeals Council erred in its holding that the evidence presented by new counsel following the ALJ's initial denial of benefits does not show a reasonable probability that it would change the outcome of the decision, because the evidence is new, material, and chronologically relevant. (Pl.'s Mem. 24). Third, Plaintiff argues that the ALJ wrongly concluded claimant "regularly smoked cigarettes" in

rejecting Plaintiff's testimony. (Pl. Mem. 26-29). Finally, Plaintiff argues that the unfavorable decision is not based on substantial evidence because the ALJ failed to obtain a complete record and prior counsel failed to obtain important and relevant medical records. (Pl. Mem. 30).

## IV. Standard of Review

"[R]eview of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also* 42 U.S.C. § 405(g); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established." *Wilson*, 284 F.3d (quoting *McRoberts*, 841 F.2d at 1080). The Commissioner's factual findings are conclusive if supported by substantial evidence. *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987). The legal principles upon which the Commissioner's decision is based are to be reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005) (quoting *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986)).

## V. Discussion

After careful consideration of each of the arguments for reversal outlined in Plaintiff's brief, the court concludes that the ALJ's decision is due to be affirmed. In the interest of clarity, the court has grouped Plaintiff's four arguments for reversal into two umbrella arguments: (1) "The ALJ Erred in Considering Plaintiff's Smoking Habit," and (2) "The Decisions of the ALJ and Appeals Council Were Not Based on Substantial Evidence." Both arguments miss the mark.

### a. The ALJ Did Not Err When She Considered that Plaintiff Regularly Smoked Cigarettes Against Medical Advice

Plaintiff contends that the ALJ was incorrect in holding that Plaintiff regularly smokes

cigarettes against medical advice. The burden is on the Commissioner to produce evidence of unjustified noncompliance with medical advice, as continuing to smoke is often not a voluntary decision, rational or otherwise. *Seals v. Barnhart*, 308 F. Supp. 2d 1241, 1251-1252 (N.D. Ala. 2004); *Dawkins v. Bowen*, 848 F.2d 1211, 1214 n. 8 (11th Cir. 1988). Under section 404.1530, an ALJ must also find that if the claimant had followed the prescribed treatment, it would restore the ability to work. *Patterson v. Bowen*, 799 F.2d 1455, 1460 (11th Cir. 1986). However, section 404.1530(a) states, "[i]n order to get benefits, you must follow treatment prescribed by your medical source(s) *if this treatment is expected to restore your ability to work* (emphasis added). Plaintiff argues that there is no indication in the record that the ALJ concluded that Plaintiff's ability to work would be restored if she ceased smoking. But, even if that is so, Plaintiff still cannot show the ALJ erred in her ultimate determination.

In fact, the ALJ stated several reasons for discounting Plaintiff's complaints, including lack of ongoing aggressive mental or physical health treatment, the effectiveness of medication in reducing her pain, and the State psychological consultant's opinion that Plaintiff's mental impairments caused no more than minimal limitation in her functioning. (Tr. 18-20). Plaintiff has not challenged any of these reasons, nor has she made an affirmative argument that the ALJ's decision was based on the potential for medical improvement if medical advice were followed. Even if this court were to grant that the ALJ erred in assessing Plaintiff's smoking habit, the stated reasons for denying disability benefits would remain functionally identical. The court finds no merit in this argument for reversal.

    **b.    The Decision of the ALJ and Appeals Council is Based on Substantial Evidence and the ALJ Did Not Err**

        **1.    The ALJ Fulfilled the Duty to Develop a Full and Fair Record**

An ALJ has a duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422

(11th Cir. 1997). However, Plaintiff's suggestion that the ALJ in the present case failed to do so is without merit.

Plaintiff contends that the ALJ failed to develop a full and fair record. She points to the itemization of records supplied by her attorney to the Appeals Council. (Pl. Mem. 19). But, as the Appeals Council noted, there is not a reasonable probability that consideration of those records would have changed the outcome. (*Id.*). Further, some of the records do not relate to the period at issue.

A review of the medical record before the ALJ shows that there were eleven exhibits of treatment records covering the period from November 2013 (more than two years prior to Plaintiff's alleged onset date) through February 2018. (Tr. 507-831). That is, there was a broad spectrum of medical information before the ALJ. When the evidence in the record is sufficient to support the ALJ's determination, the ALJ does not have a duty to obtain additional medical evidence. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); (Pl. Mem. 19). Neither Plaintiff nor Plaintiff's counsel objected to the exhibits, and Plaintiff's counsel specifically informed the ALJ that there was no outstanding medical information. (Tr. 261-62, 299). The ALJ fulfilled her duty to create a full and fair record.

2.      **The Appeals Council Did Not Err in Denying Plaintiff's Request for Review**

Plaintiff submitted additional evidence to the Appeals Council, including hundreds of pages of medical records. (Tr. 68-257). The Appeals Council "must consider [evidence that is] new, material, and chronologically relevant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council considered the evidence presented by Plaintiff and concluded that it either did not show a reasonable probability that it would change the outcome of the ALJ's decision or did not relate to the period at issue. (Tr. 2).

Plaintiff cites *Washington v. SSA*, 806 F.3d 1317 (11th Cir. 2015) to support her contention that when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate. This court does not disagree. But, the *Washington* case is of no help to Plaintiff here.[1] In that case, the Appeals Council was found not to have considered evidence proffered by the Plaintiff. Here, the opposite is true. The Appeals Council considered all evidence submitted by Plaintiff following the ALJ's decision. (Tr. 2). The question here relates to evidence proffered to the Appeals Council after the ALJ's ruling.

Plaintiff argues at length in her brief that the new evidence presented to the Appeals Council is new, material, and chronologically relevant. (Pl. Mem. 20-26). However, to be clear, the Appeals Council is not mandated to grant a claimant's request for review of an ALJ's decision whenever additional evidence meets these criteria. For example, if the "new" evidence is not likely to change the outcome, the Appeals Council need not grant a request. And, the Appeals Council considers the record as a whole in making that determination. 81 Fed. Reg. at 90,991.

The court has closely scrutinized each of the new medical records provided by Plaintiff, in the order they were listed in her brief, and determined that the ALJ's decision was not contrary to the weight of this new evidence. As the Appeals Council correctly determined, there is no reasonable probability that consideration of the records would change the outcome of the ALJ's decision. *Ingram*, 496 F. 3d at 1262. Plaintiff submitted records from seven medical facilities at which she was treated for various ailments. Plaintiff visited Coosa Pain & Wellness three times between May 2016 and August 2016. (Tr. 243-51). During those visits, Plaintiff described pain in her lower back, hip, and left lower extremities. (*Id.*) Her pain fluctuated between six and seven out of ten. (*Id.*) The effectiveness of her medication in relieving her pain fluctuated between 30% and

---

[1] This is also true of the handful of other cases cited by Plaintiff that involved remands based on *Washington*. (Pl. Mem. 23).

70%. (*Id.*) This is consistent with the record evidence relied on by the ALJ.

Plaintiff visited Gadsden Orthopaedic in September 2016. The physician noted that she should continue with pain management, but was not a candidate for surgery. (Tr. 239-42). Plaintiff visited Gadsden Surgery Center and underwent surgery in November 2013 to treat a metatarsal fracture. (Tr. 219-38). Plaintiff visited Gadsden Surgery Center again in April 2014 to receive a lumbar epidural injection of a therapeutic substance. (Tr. 193-238). This also is consistent with the record evidence relied upon by the ALJ.

Plaintiff also included records from Gadsden Regional that date as far back as 2008. (Tr. 173-92). Again, these records do not contradict the record evidence the ALJ relied upon, as that record evidence already made clear that Plaintiff was repeatedly seen for back pain. (*Id.*) Plaintiff also included records from Marshall Neurology Center, in which a physician noted her back and leg pain, again consistent with the record relied upon by the ALJ. (Tr. 170-72).  Plaintiff includes records from several visits to Northeast Orthopedic Sports Clinic and Physical Therapy, between January 2014 and July 2017. (Tr. 101-69). Notes from these visits outline therapy treatments for pain in the lower back and extremities and that Plaintiff responded with minimal, mild, or moderate pain. (*Id.*)  This is consistent with the record evidence relied upon by the ALJ. Finally, Plaintiff submitted records from Pain Management Services Brookwood detailing seven visits, each for lower back pain and/or lower left extremity. (Tr. 73-100). This is consistent with the record evidence relied upon by the ALJ.

Plaintiff has failed to show that the ALJ's ruling was contrary to weight of the evidence presented, and thus has failed to show that the Appeals Council erred in denying her request for review. *See* 81 Fed. Reg. at p. 90,991. The Appeals Council fulfilled its duty under *Ingram* and *Washington* by properly considering (but ultimately rejecting) the evidence presented by Plaintiff

following the unfavorable ALJ ruling. Furthermore, Plaintiff has failed to provide any substantive argument, or cite to any specific instance, that supports her contention that the "new" evidence shows a reasonable probability that it would change the outcome of the decision (and, in some instances, has failed to show that the records relate to the period at issue).

## VI.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 7, 2020.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE